## GRAHAM AND ABERCROMBIE v. CHANDLER.

1. An execution issuing from the orphans' court, for the collection of money, should be made returnable to the regular *semi-annual* term of the county court proper, if there are fifteen days between the commencement of the term, and the teste of the writ; if not, then to the next succeeding term of the county court.

2. Such an execution, when issued, has the same attributes as an execution issued on a judgment at common law, must be executed in the same mode, and may be enforced in the same manner; consequently, a motion may be made against the sheriff for failing to make the money.

Error to the Circuit Court of Perry.

MOTION for judgment by the plaintiffs in error, against the defendant, sheriff of Perry, upon a suggestion that by due diligence he could have made the money on an execution which issued in their favor, upon a decree of the orphans' court of Perry, which was made returnable to the next stated term of the county court. The motion was originally made in the county court of Perry, and transferred to the circuit court, the judge of the county court being interested. On motion of the defendant's counsel, the court refused to take jurisdiction, and dismissed the cause, which is the matter now assigned for error.

PECK, for plaintiff in error.
A. B. MOORE, contra.

ORMOND, J.—In Westmoreland v. Hall, 11 Ala. R. 127, we held, that a motion for failing to return an execution, issued by the orphans' court, which was made returnable on a

day appointed by the orphans' court for the return of process, would not lie against the sheriff, and it is said, that "if the party in whose favor a decree of the orphans' court is rendered, would avail himself of the summary remedy against sheriffs, he should cause his execution to be returned to a *stated term* of the county court."

That has been done in this case, the execution having been made returnable to the term of the county court proper. a very brief review of the statute on this subject, will show the correctness of this course.

The present system was established in 1821, by which a single judge was appointed to perform the functions of judge of the probate court, and orphans' courts, and also to hold two terms in each year, at periods designated by law, for the transaction of business as a court of common law. He was required, "by order made in open court, to appoint certain days, not less than *one, in every period of each month*, for the return of process in such cases, as he is competent to hear and determine, in vacation." It is evident, that the *process* here spoken of, does not mean executions. On its face it imports such process as was necessary to enable it to perform those duties which it was required to perform in vacation. That the legislature did not include executions, in the term process, is placed beyond doubt, or controversy, by the fact, that it was not until nine years after the act was passed, that the orphans' court had power to issue executions.

This act, passed in 1830, gives to decrees on final settlements against executors, &c., the force and effect of judgments at law, and authorizes executions to issue thereon; but the act is silent as to the term of the court, to which the execution shall be returned. [Clay's Dig. 304, § 42.] It would seem however, necessarily to follow, that when this power was conferred on the orphans' court, the process was to be subject to the same rules by which the same process was governed, when issued by other courts of record.

The act of 1807, is the general law, regulating the manner of issuing and returning executions. They are to be made returnable to the next succeeding term, which by a subsequent act is changed, to three days preceding the first day of the next succeeding term; and at least fifteen days is

required to intervene, between the teste and return of the writ. To this act there is a proviso, " that if the plaintiff shall desire an execution to issue, the execution returnable at a further day, the clerk shall issue the same accordingly, so as the day of such return, be upon a court day, within ninety days after the teste thereof." [Clay's Dig. 199.] This act passed under the review of this court, in Harrell v. Martin, Pleasants & Co., 4 Ala. Rep. 650. It was there held, that the term *court day*, in the proviso, was without meaning ; the act having been copied literally from an old statute of Virginia, in which State there are monthly terms of the county court, held throughout the year, called *court days*. The true construction of the act was held to be, that the execution must be made returnable to the next succeeding term of the court, if there were fifteen days between the teste and return ; but if there were less than that number of days, between the teste and return of the writ, then it must be made returnable to the next succeeding term. As therefore, fifteen days must elapse, between the teste and return of the execution, and if a levy is made, at least ten days notice must be given of the sale, not to speak of the other delays which the law allows, by giving a forthcoming bond, &c., it is obviously impossible, for an execution from the orphans' court to be made returnable, to the day which the court is required to designate for the return of such process, as it may hear and determine in vacation. These days, or terms, if they can be so called, must occur at least once in every month, and may, and in most of the counties of the State do, occur much oftener—twice, three times, or even four times in each month. From this it must result necessarily, that the execution, when issued, should be made returnable to the regular *semi-annual* term of the county court proper, if there are fifteen days between the commencement of the term and the teste of the writ ; if not, then to the next succeeding term of the county court. This is the correct construction of the statute, or the act of 1830 is inoperative, and no execution can issue on decrees of the orphans' court : and this is in effect the result of the decision in Westmoreland v. Hall, *supra.*

The act permitting such a motion as this to be made

against defaulting sheriffs, passed in 1826, four years previous to the law authorizing the orphans' court to issue execution on its decrees, but it appears to us, there can be no doubt it operated upon the act of 1830, as soon as it was passed. It is a remedy given for the enforcement of executions, issued by a court of record, and whenever the power to issue execution is given to a court of record, all the laws applicable to the issue, return, and mode of enforcing the process, must immediately attach to it, unless other modes are pointed out in the act itself. Such was evidently the design of the legislature, as the act declares, that the decree of the orphans' court, shall have the force and effect *of judgments at law*. When therefore an execution issues on a decree of the orphans' court, it has the same attributes as an execution upon a judgment at common law—*must be executed in the same mode, and may be enforced in the same manner.*

This motion was transferred to the circuit court, because, as stated on the record, the judge of the orphans' court was related by consanguinity, to one of the plaintiffs. This was expressly authorized, and indeed required by the act of 1831. [Clay's Dig. 298, § 10.]

The court having erred in refusing to take jurisdiction of the cause, its judgment must be reversed, and the cause remanded.